## BENJAMIN TATE *vs.* JACOB WHITNEY.

Where it appeared that T. had accused W. of *forging* his, T.'s name, to a subscription for a newspaper, and W. had threatened T. with a prosecution for slander, and T., in order to settle the matter, had assigned to W. a bond and mortgage, upon which there was due about the sum of three hundred and thirty-five dollars, and T. afterwards filed a bill against W. to have the bond and mortgage re-assigned. *It was held,* that the assignment was made without consideration, and W. was directed by decree to re-assign the bond and mortgage to T. in thirty days from the service of a copy of the decree.

1839.
Second Circuit.

Tate
*vs.*
Whitney.

January 11.

The bill in this case was filed August 17, 1837, and states, that on or about the second day of June of the same year, the complainant possessed all the right, title, interest, and claim to a certain indenture of mortgage, executed by William Gilcrist to complainant, bearing date April 8, 1837, of certain premises therein described and set forth in the bill, conditioned to pay five hundred dollars, and interest, six months from the date thereof.

That, on or about the second day of June, 1837, complainant had a conversation with defendant at Jonesville, in the county of Hillsdale, in regard to the subscription, by the complainant, for a certain newspaper called the Christian Palladium, in which conversation complainant told the defendant that he never had subscribed for said paper, nor authorized any other person to subscribe for said paper for him (the complainant,) and that complainant further stated to the defendant, that he, the defendant, had forged his (the complainant's,) name, or given some other person liberty to sign the complainant's name for said paper, which the defendant denied. That, soon after such conversation, the defendant threatened to prosecute the complainant for the words he had spoken as aforesaid, and told complainant if he did not assign over to the defendant the indenture of mortgage, and the bond referred to therein and accompanying the same, as a collateral security, and settle with him, the defendant, for the language complainant had used in relation to the subscription for said newspaper, he, the de-

fendant, would keep the complainant in prison eight or ten years, for what he, the complainant, had said; and complainant being intimidated and greatly distressed at the threats and menaces of the defendant, and being ignorant of his own rights, and of the law, was induced, by these threats and menaces of the defendant, to execute an assignment of the bond and mortgage, and did, on the second day of June aforesaid, execute and deliver to the said defendant, an assignment of said bond and mortgage, without any consideration of whatever name or nature, and did actually deliver over said bond and mortgage. The bill further alledges, that the complainant had applied to the defendant to re-assign and re-deliver said bond and mortgage, and to pay complainant the amount thereof, &c., which defendant had refused to do; and prays that the defendant may be decreed to pay to the complainant whatever money, if any, he may have received, or shall receive, on said bond and mortgage, and be restrained by injunction, from assigning, or in any way transferring or disposing of the same, and that defendant may be decreed to re-assign and deliver up said bond and mortgage to complainant.

The answer admits the bond and mortgage, and that at the time of the assignment thereof, there was then due thereon, about the sum of three hundred and thirty-five dollars; states that previous to the time of the assignment stated in the bill, the defendant had been frequently informed by divers good and worthy citizens of the county of Hillsdale, that the complainant had reported and declared, and was in the frequent habit of reporting and declaring that the defendant had *forged* the name of the complainant to a subscription for the newspaper, mentioned in the bill; that defendant was advised to ask some redress of the complainant for his slanders; that the defendant called on the complainant at the town of *Litchfield*, about eight miles from Jonesville, and had a conversation with the complainant, in which the defendant informed the complainant of the slanderous, false and defamatory declarations made by the complainant, of and concerning the defendant, charging

him with the crime of forgery; that the complainant admitted to defendant, that he (the complainant,) had before then, at divers times and places, and in the hearing and presence of divers persons, reported and declared that the defendant had *forged* his (the complainant's,) name to the said subscription, and that the reports and declarations were false, and without any foundation in truth, and that the complainant was willing to redress the wrong he had done to the reputation and good name and credit of the defendant by such false and slanderous reports; to which the defendant replied, that the said complainant must make him (the defendant,) satisfaction in some way, or that the defendant should seek redress by proceedings at law; that complainant then informed defendant, that if he (the defendant,) would take the bond and mortgage in full satisfaction for the wrongs done to the defendant by the false and slanderous reports and declarations of the complainant, he (the complainant,) would duly assign over the same to the defendant; and that complainant strongly solicited the defendant to accept of the mortgage in satisfaction for the said wrong; that at the special request and urgent solicitation of the complainant, the defendant agreed to accept and receive the bond and mortgage in full satisfaction of said wrong and injury, and thereupon the complainant assigned and delivered the said bond and mortgage to defendant, and defendant at the same time acquitted and discharged complainant from all liability for his false and slanderous reports, &c.

Denies the threats of prosecution, &c., and also denies that defendant told complainant he would keep him in jail, as stated in the bill, denies that he was requested to re-assign the bond and mortgage, as stated in the bill.

The cause was heard upon bill, answer and proofs.

E. LAWRENCE, for complainant.

I. The transfer of the mortgage referred to in the bill, and answer was obtained by duress, threats or menaces, and is therefore, void. 1 *Story's Com. on Eq.*, 243, 4, 5; (*note* 1.)

Second Circuit.

Tate
*vs.*
Whitney.

II. That the assignment of the mortgage was without consideration, and void.

*1st.* The words spoken by Tate, that the defendant had forged or subscribed his (Tate's,) name to the subscription list of a newspaper called the "Christian Palladium," *are true,* and of course a justification to the complainant.

Maybee and Manchester, in their testimony, state that Whitney ordered the complainant's name to be added to the list.

*2d.* The charge, as made by complainant against Whitney, of *forging or subscribing his name to the list,* was not *actionable* in itself, as it did not impute any *crime* punishable by law, and no special damage is alledged or proved.  1 *Com. Dig.,* 390. (*Tit. F. 6.*)

III. The charge of Tate against Whitney did not amount to a *forgery,* and might be called any other crime with equal propriety.

*1st.* The act charged was not a *forgery,* because neither the statute or the common law embraces such an act.  *Bacon's Abr. Title forgery, B.*

*2d.* It was not a forgery, because there was no intention on the part of Whitney to injure or defraud Tate or any other person, in the act charged.  4 *Bl. Com.* 202.

*3d.* It was not a forgery, because Whitney was to receive no benefit from the act, but Tate himself was the person to be benefitted by the act of Whitney.

*4th.* Equity will relieve when any undue influence has been used over an ignorant and unsuspecting man.  1 *Story's Com. on Eq.,* 242.

*5th.* The declarations of Whitney to Tate, that he would imprison him, &c., were false, and acted as a surprise and imposition upon Tate.  1 *Story's Com. on Eq.* 202.

*6th.* The inadequacy of the consideration for the assignment of the mortgage is so great, that it seems unconscionable, and shocks the understanding of every man, and bears on the face of it, conclusive and decisive evidence of *fraud.*  1 *Story's Com. on Eq.,* 250.

P. R. Adams for defendant.

The Chancellor.  From the bill, answer and testimony, it is apparent that the defendant was practising upon the fears of a timid and ignorant man, and that the assignment of the mortgage in question, was in fact procured without any consideration whatever.  The complainant is entitled to a decree that the defendant, Whitney, re-assign and re-deliver said mortgage to the complainant within thirty days from the service of a copy of the decree in this cause.

Decree accordingly.*

---

* An appeal was taken in this case to the supreme court, and the decree of the Chancellor affirmed, January 22, 1839.